Filed 7/25/14  P. v. Mask CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>BOBBY MASK,<br><br>    Defendant and Appellant. | C070588<br><br>(Super. Ct. No. 11F00192) |

Convicted of various sex offenses against his daughter, defendant Bobby Mask raises the following grounds of appeal:

1.    The trial court abused its discretion by admitting evidence under Evidence Code sections 1108 and 1101 of defendant's prior uncharged sex offenses against another daughter and two daughters of two of defendant's former girlfriends;

2.    Insufficient evidence supports the jury's finding that defendant committed seven counts of child molestation with duress;

1

3.　　Insufficient evidence supports the jury's guilty verdict of sexual penetration of a minor and one count of child molestation as charged; and

4.　　The trial court abused its discretion by not disclosing the victim's subpoenaed school records to defendant.

We conclude insufficient evidence supports the convictions of sexual penetration and one count of child molestation as those offenses were charged by the prosecution, and reverse those convictions. We disagree with defendant's other arguments and affirm the judgment in all other respects.

FACTS

Defendant was born in 1949. There is conflicting information in the record as to the number of children defendant has. He had relationships with at least five women, and lived with them and their children at different times over the years. The victim, V.M., was born in 1997, and is the youngest of defendant's biological children. She was in defendant's sole custody from the age of two until 2010 when, a few days before her 13th birthday, she was removed from the home. The crimes against her occurred while she and defendant lived at the Colonial Apartments, the Gold River Apartments, and a townhouse on Hallelujah Court.

The sexual abuse began when defendant and V.M. lived at the Colonial Apartments. When the first incident occurred, no one else lived with them.[1] On that occasion, when V.M. was 10 years old, defendant picked her up from school and took her home. Defendant told V.M. to put away her things and go to his room. Defendant came into his room and told V.M. to take off her clothes and lay on the floor. She complied. Defendant took his clothes off, touched V.M.'s vagina with his penis, orally copulated her, and had intercourse. Defendant said nothing to her after he had stopped.

---

[1]　　There were other times when defendant's then girlfriend and V.M.'s "stepmom," Linda W., and another of his daughters lived with them at the Colonial Apartments.

2

V.M. testified at trial in 2012 this was the only molestation that occurred at the Colonial Apartments, but in October 2010, in a Sexual Assault Forensic Exam (SAFE) interview, she stated the same type of molestation had happened two or three times while she and defendant lived there.

V.M. testified defendant did not abuse her when they lived in their next residence, the Gold River Apartments. However, in the SAFE interview, V.M. said defendant molested her every other day at the Gold River Apartments.

For a time, V.M. and her sister next lived with an older sister. No molestations occurred there, but one time, after defendant had brought V.M. to his house to spend the weekend, he told her to take her clothes off, and he digitally penetrated her.

The molestations continued after V.M. and her sister moved to a townhouse on Hallelujah Court where defendant and Linda W. had been living. Three of V.M.'s nephews and one niece also lived with them. V.M. had just completed 7th grade when she moved to Hallelujah Court. One day, defendant sent V.M.'s sister to the store, and he told V.M. to go upstairs to his room. He followed her into the room, told her to take her clothes off, took his clothes off, and orally copulated her. He also placed his penis on her vagina, and it penetrated her. He did this for a couple of minutes, but stopped when V.M.'s sister came home.

V.M. defendant put his penis on her vagina more times than she could count while they lived on Hallelujah Court. She also stated defendant had intercourse with her two times and orally copulated her "a lot" while living there. Every time defendant touched V.M.'s vagina, his finger penetrated her, and that happened more than once.

Every time defendant finished molesting V.M., he told her not to tell anyone. It felt wrong to V.M. when he said that, but she never told anyone what was happening to her until a school counselor read her journal. One journal entry stated: "Dear Journal [¶] I don't want to go back home because my dad does bad things to me like when everybody else in the house is gone he tells me to go upstairs into his room and tells me

3

to pull down my pants and he puts his mouth on my private and he puts his tounge [*sic*] all around it.  When everybody comes back to the house he is like 'pull up your pants and you better not tell anybody, not at school, not at home, and or anywhere else.  I don't want to go home."

Once, while they lived on Hallelujah Court, V.M. was outside talking with her friends.  Defendant called her in and asked if she had told her friends anything.  She said she had not.  Defendant became angry, yelled at her, and slapped her across her face.  V.M. felt scared.  She believed if she ever told anyone she was being molested, defendant would hit her.

V.M. never resisted defendant's actions and never asked him why he was molesting her.  When she was in the sixth grade, she ran away.  Defendant found her, took her home, and asked why she had run away.  V.M. told him she had left because she wanted him to stop molesting her.  Defendant said he would stop, but two or three days later, he began molesting her again.

Another of defendant's adult daughters, L.M., and two adult daughters of former girlfriends of defendant, S.S. and S.A., testified at trial that defendant had molested them also when they were children.

PROCEDURAL HISTORY

A jury convicted defendant of one count of sexual intercourse with a minor 10 years of age or under at the Colonial Apartments (Pen. Code, § 288.7, subd. (a) (count one)),[2] one count of sexual penetration with a minor 10 years of age or younger at the Colonial Apartments (§ 288.7, subd. (b) (count three)), and seven counts of child molestation with force or duress (§ 288, subd. (b)(1) (counts five, six & eleven through fifteen)).  Two molestation convictions were alleged to have occurred at the Colonial

---

[2]    Undesignated references to sections are to the Penal Code.

4

Apartments, (counts five & six) and the other five convictions were alleged to have occurred at the townhouse on Hallelujah Court. The court also found defendant had previously been convicted of a serious felony for purposes of sections 667, subdivision (a) (five-year enhancement), and subdivisions (b) through (i) ("Three Strikes" law).

The trial court sentenced defendant to a prison term totaling 90 years to life plus 117 years, calculated as follows: 55 years to life on count one (25 years to life, doubled for the strike prior, plus five years on the section 667, subd. (a) enhancement); 35 years to life on count three (15 years to life, doubled for the strike prior, plus five years on the section 667, subd. (a) enhancement); and 16 years for each of the remaining seven molestation convictions (the upper term of eight years, doubled for the strike prior) plus five years on one of the molestation convictions for the section 667, subdivision (a) enhancement, to be served consecutively.

## DISCUSSION

## I

### *Evidence of Defendant's Prior Uncharged Sex Offenses*

Defendant contends the trial court erred when it admitted evidence pursuant to Evidence Code sections 1108 and 1101 of his prior uncharged sex offenses against his daughter L.M. and, S.S. and S.A., the daughters of two of defendant's former girlfriends. He also asserts Evidence Code section 1108 is unconstitutional. We disagree with his contentions.

A.  *Additional background information*

The prosecution filed an in limine motion to admit the testimony of defendant's uncharged molestations of L.M., S.S., and S.A. Defendant opposed, arguing the evidence was unduly prejudicial under Evidence Code section 352 because the acts happened years ago, the evidence was not probative, and it would take up a significant amount of court time.

The court granted the motion under Evidence Code section 1108. It found the evidence was not unduly prejudicial because the uncharged offenses were "strikingly similar" involving family members and were not more inflammatory than the charges involving V.M. The court said there also was a strong basis to admit the evidence under Evidence Code section 1101, subdivision (b), "for appropriate circumstances, for example, the intent and lack of mistake, that sort of thing."

L.M., 45 years old at the time she testified, is the biological daughter of defendant. Defendant began molesting her when she was nine years old. The first incident occurred when defendant woke her up from sleeping by orally copulating her. That happened more than once. The molestations continued until L.M. left to live with relatives at the age of 10 or 11. When she returned to live with defendant, he was living with his girlfriend and her daughter, S.S. From this time, defendant became more physical with L.M. He would rub his penis against her vagina. That happened more than one time. He would grab her and turn her around in order to molest her. The molestations continued until she was 14 or 15 years old. Defendant never spoke with her about what he was doing.

S.S. lived with her biological mother, who was one of defendant's girlfriends, as well as with L.M. and defendant, from when she was an infant until she was about 14 or 15 years of age, when defendant and S.S.'s mother ended their relationship. S.S. is about seven years younger than L.M. Defendant began molesting her when she was in the fourth grade. He occasionally touched her vagina while she slept. She woke up to defendant digitally penetrating her. She was scared, but defendant told her to be quiet. She started to urinate in her bed intentionally, hoping that would prevent defendant from molesting her, but it did not stop him. Other times, she would hold the blanket down, prop an object against her door, or even try to physically stop defendant, but those tactics did not stop him.

6

When S.S. was 15 or 16 years old, defendant's conduct became more physical. He orally copulated S.S. a few times a week. On one of those occasions, he attempted to have intercourse with her, but she could not remember if there was actual penetration. On some occasions, S.S. would fight, kick, pull the blanket up, and tell defendant to stop, but he would not. He was bigger and stronger than her, so she just gave in.

S.A. is the daughter of yet another one of defendant's former girlfriends. S.A. was 39 years old when she testified. She met defendant when she was in the 5th grade. Defendant would split his time living with S.A.'s mother and her children, and with two other women and their children. S.A. said she and S.S. were the same general age and they grew up together. She called S.S. her sister, but she stated she and S.S. never lived in the same house together except when S.S. would stay at her house from time to time.

Defendant began molesting S.A. during the summer after she had finished 6th grade. S.A. recalled an early incident when she was staying over at S.S.'s house. Defendant came into her room while she slept, got on top of her, and rubbed her vagina with his finger or penis. This awoke S.A., and defendant told her to be careful because a baby was also in the bed. Defendant molested her numerous times from the summer after she completed 6th grade until she left home at the beginning of 9th grade. Defendant digitally penetrated her many times. The molestations happened in different rooms at her house and S.S.'s house and at different times of the day. Defendant never said anything to her about what he was doing.

The last time defendant molested S.A. was right before she tried to kill herself. She was home alone. Defendant came in and went into the den. He had been drinking. S.A. hid from him. Defendant called out, "It's me, Daddy. You don't got to hide from me. I ain't going to hurt you. It's me, Daddy." S.A. came out from hiding, and defendant digitally penetrated her.

7

B.    *Analysis*

Defendant contends the trial court abused its discretion in admitting the evidence of his prior uncharged sexual offenses under Evidence Code sections 1108 and 1101.  He claims the evidence was inadmissible under Evidence Code section 1101's exceptions to the rule prohibiting propensity evidence, and it was inadmissible under Evidence Code section 1108 because it was unduly prejudicial under Evidence Code section 352.  He also asserts Evidence Code section 1108 is unconstitutional.  We disagree with his contentions.

Evidence Code section 1108 authorizes a trial court to admit evidence of a defendant's prior sexual offenses as propensity evidence in a sex crime case so long as the evidence is not unduly prejudicial under Evidence Code section 352.  (Evid. Code, § 1108, subd. (a).)[3]  When determining whether evidence of prior sex offenses is prejudicial under Evidence Code section 352, " 'trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.' (*People v. Falsetta* [(1999)] 21 Cal.4th [903], 917.)  The court's ruling under [Evidence Code] section 1108 is subject to review for abuse of discretion.  (*People v. Story* [(2009)] 45 Cal.4th [1282], 1295.)" (*People v. Loy* (2011) 52 Cal.4th 46, 61.)

---

**3**    Evidence Code section 1108, subdivision (a) reads:  "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

The trial court did not abuse its discretion. Evidence of defendant's prior sex offenses against his daughter and two daughters of his former girlfriends was highly probative of his propensity to molest young girls over whom he acted as a father figure, including V.M. His actions against L.M., S.S., and S.A. were similar to his actions against V.M. The victims were his biological daughters or the daughters of his former girlfriends. The molestations started when the girls were very young, and ended as the girls approached high school age. He always molested the girls when they were at one of his homes, and often when they were asleep. He commonly rubbed his penis against the victim's vagina without penetrating. He said nothing to his victims about his misconduct.

Defendant contends the uncharged offenses were highly inflammatory. He claims evidence of S.S.'s attempts to protect herself was prejudicial. As the trial court found, however, the uncharged offenses were no more inflammatory than the charged offenses involving V.M. And certainly S.S.'s actions to thwart defendant from molesting her were not more prejudicial than the actual molestations defendant inflicted on her.

Defendant asserts the uncharged offenses were too remote, having occurred as much as 35 years before the current offenses, with the latest uncharged acts having occurred in 1988. The uncharged acts were remote, but the trial court balanced that fact against the evidence's probative value, and found the remoteness was outweighed. This was particularly so because of the similarity of defendant's molestations, and the fact he would molest a girl until she reached about 15 years of age, and then would start molesting another. This pattern makes the remote offenses relevant to the current offenses.

Defendant claims the uncharged offense evidence would confuse the jury because defendant was not charged with those acts, and the jury would focus more on his "unrevenged" behavior instead of the allegations in this case. Although the circumstances that defendant was not convicted for the uncharged offenses is a factor for the trial court to consider (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405), it was

9

outweighed by the evidence's probative value. The testimony of the uncharged acts was no more prejudicial than V.M.'s testimony, and whether it would increase the likelihood of confusing the issues was not shown.

Defendant asserts introducing the evidence consumed too much of the court's time. It did not. The trial took only three days of testimony. In such a short trial for a multicount sex crime case, where the uncharged offense testimony was given by only three of the eight witnesses, we cannot say the trial court abused its discretion when it determined receipt of the uncharged sex offense evidence would not unduly consume court time.

Because we find the trial court did not abuse its discretion in admitting the evidence under Evidence Code section 1108, we do not address the arguments concerning the application of Evidence Code section 1101. "In enacting Evidence Code section 1108, the Legislature decided evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of Evidence Code section 1101. [Citations.]" (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 405.)

Failing to convince us the trial court abused its discretion admitting the evidence, defendant asserts Evidence Code section 1108 is unconstitutional. It is not. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 915-918.)

The evidence of defendant's uncharged sex offenses was probative, it was relevant to the jury's main inquiry, it documented offenses similar to those charged in this case, it was not inflammatory beyond the charged offenses, and it did not unduly consume court time. Under these circumstances, we conclude the trial court did not abuse its discretion by admitting the evidence.

## II

### *Sufficiency of Evidence of Molestations with Duress*

The jury convicted defendant of seven counts of molesting a child "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . ." (§ 288, subd. (b)(1).) Defendant contends no substantial evidence demonstrates any of the molestations were committed with force or duress. He asserts there is no evidence defendant directly or impliedly threatened V.M. with force, violence, or retribution to intimidate her to acquiesce in the molestations. We disagree.

"[T]he legal definition of duress is objective in nature . . . ." (*People v. Soto* (2011) 51 Cal.4th 229, 246.) " '[D]uress,' as used in section 288[, subdivision] (b)(1), means ' "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' [Citations.]" (*People v. Soto, supra*, 51 Cal.4th at p. 246, italics & fn. omitted.)

" ' "The total circumstances, including the age of the victim, and [her] relationship to defendant are factors to be considered in appraising the existence of duress." [Citation.]' [Citations.] 'Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family.' [Citations.]" (*People v. Veale* (2008) 160 Cal.App.4th 40, 46.)

"[D]uress involves psychological coercion. [Citation.] Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes. [Citations.] 'Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim' [are] relevant to the existence of duress. [Citation.]" (*People v. Schulz* (1992) 2 Cal.App.4th 999, 1005.)

11

The parent-child relationship does not, as a matter of law, establish force or duress. (*People v. Cochran* (2002) 103 Cal.App.4th 8, 16, fn. 6, disapproved on another ground in *People v. Soto, supra*, 51 Cal.4th at p. 248, fn. 12.) "Nonetheless, as a factual matter, when the victim is as young as [nine years old] and is molested by her father in the family home, in all but the rarest cases duress will be present." (*People v. Cochran, supra,* 103 Cal.App.4th at p. 16, fn. 6.)

Sufficient evidence confirms defendant committed the acts with duress. Duress arose from defendant's parental relationship with V.M. and his position of dominance and authority, his older age and greater size, his continuous exploitation of V.M., and his implicit threat as a parent that her failure to obey would result in some kind of hardship.

Defendant controlled V.M. at her young age. He is her biological father. He began molesting her when he was 57 years old, and V.M. was 10 years old. He continued to molest her until just prior to her 13th birthday. Defendant is five feet, eleven inches tall and weighs 165 pounds. The record does not disclose V.M.'s size at the time of the molestations, but she was much younger than defendant.

His authority appeared unquestionable when the molestations began. The first molestations occurred when defendant and V.M. lived alone in the Colonial Apartments. He was the only parental authority in her life at that time. Defendant brought her home, and ordered her to go to his room, take off her clothes, and lie down. The molestation left her scared, and he told her not to tell anyone. She was a young victim molested by her father in the family home. As with his other children and the daughters of his various girlfriends, he never explained his misconduct to her.

Defendant exploited V.M. continuously. He continued molesting her using the same general pattern of ordering her to obey when they moved to the Hallelujah Court townhouse. Again, he ordered her to go to his room and take off her clothes. Again, he told her not to tell anyone. And when he feared she had told friends of his actions, and she denied it, he slapped her, confirming in her mind there was a risk of harm if she went

12

against his orders.  The molestations continued after that battery, and they occurred at that residence too many times to count.

This evidence establishes defendant psychologically coerced V.M. to obey him, and he did so with an implicit threat of harm or hardship.  Although there is no evidence he expressly threatened her harm, physically restrained her, or verbally warned her of harm, there is sufficient evidence he implicitly threatened her to comply with his demands.   When a father repeatedly orders his young daughter to go to his room, take off her clothes, and lie down so that he can molest her, and then repeatedly tells her not to tell "anybody, not at school, not at home, and or anywhere else," such that she fears going home, he is impliedly threatening her with hardship or retribution if she fails to comply with his parental authority.  In that situation, the risk of some adverse consequence for disobedience is real.  A father who uses his parental authority to direct and order a child's actions in the manner done here so he can molest her commits the molestation by duress.  Sufficient evidence establishes defendant molested V.M. by means of duress.

### III

*Sufficiency of Evidence on Counts Three and Five*

Defendant contends insufficient evidence supports his convictions on counts three and five.  Count three charged defendant with sexual penetration of a child while at the Colonial Apartments, specifically alleging defendant digitally penetrated V.M., and count five charged defendant with forcibly molesting a child at the Colonial Apartments, specifically alleging defendant placed his hand on V.M.'s vagina.  Defendant contends there was no evidence of digital penetration or forcible molestation as specifically alleged while V.M. resided at the Colonial Apartments.  We agree and reverse the convictions on those two counts.

V.M. testified that while she lived at the Colonial Apartments, defendant on one occasion touched her vagina with his penis, orally copulated her, and had sexual

13

intercourse with her. In her SAFE interview, she said the same activity occurred two or three times while they lived at the Colonial Apartments. However, at no time did she state defendant digitally penetrated her or placed his hand on her vagina while they lived there.

To support the convictions, the Attorney General relies on a statement V.M. made when she testified about the molestations that occurred in the Hallelujah Court townhouse. The prosecutor asked V.M. if every time defendant touched her vagina with his hand, his finger also penetrated her. V.M. said yes. The Attorney General contends this statement, along with the evidence of defendant's prior uncharged offenses, is sufficient circumstantial evidence to uphold the convictions. It is not.

The prosecutor's question did not apply to molestations that occurred at the Colonial Apartments. Prior to asking this question, the prosecutor told V.M. he was "going to just focus you now at Hallelujah Court." His subsequent questions referred just to that time period, and cannot be read to have included the time at Colonial Apartments.

Even if V.M.'s answer could be read to apply to the time at the Colonial Apartments, it still would not provide sufficient evidence to uphold the convictions. The question was whether defendant digitally penetrated her every time he touched her vagina with his hand. At no time did V.M. testify that defendant touched her vagina with his hand when they lived at the Colonial Apartments.

Insufficient evidence supports defendant's convictions on counts three and five, and those convictions are reversed.

IV

*Disclosure of V.M.'s School Records*

Defendant subpoenaed V.M.'s school records. The trial court denied V.M.'s motion to quash, and it conducted an in camera review of the produced records. The court disclosed one document under a protective order it found was relevant to V.M.'s

14

credibility. The document was a suspension notice issued after V.M. had stolen a cell phone in class.

Defendant asks us to review the records in camera for relevance, and to make the records available to the parties under a protective order. Defendant asserts he needs to view the records in order to be able to argue that the trial court's refusal to disclose all of the records at trial violated his due process rights.

Good cause to compel production of confidential records in a criminal action does not entitle a defendant to receive them. Rather, the custodian of the records forwards them to the court and, if good cause exists, the court will review them in camera, balance the defendant's right of confrontation against the subject of the record's right of privacy, and determine which records, if any, are essential to the defendant's right of confrontation. (*Susan S. v. Israels* (1997) 55 Cal.App.4th 1290, 1295-1296; § 1326, subd. (c).) If the court determines after an in camera hearing that no records may be disclosed, a defendant is not entitled to view the documents in order to show the court abused its discretion. (See *Pennsylvania v. Ritchie* (1987) 480 U.S. 39, 59-61 [94 L.Ed.2d 40, 58-60] [defendant's right to fair trial when seeking disclosure of confidential records is adequately protected by an in camera review of the records].)

We have reviewed the sealed records and conclude the trial court did not abuse its discretion. Except for the record already disclosed, none of the records are essential to defendant's right of confrontation, and that right does not outweigh V.M.'s right of privacy in this instance.

In his reply brief, defendant asserts for the first time that the trial court erred in not disclosing all of V.M.'s school records because defendant, as V.M.'s father, had a statutory right to review them. (Ed. Code, § 49069; Fam. Code, § 3025; 20 U.S.C. § 1232g.) Defendant did not raise this argument at trial, and the prosecution, the Attorney General, and V.M., have not had an opportunity to address it. As a result, the argument is

15

forfeited, and we will not consider it.  (*People v. Vera* (1997) 15 Cal.4th 269, 281, disapproved on another ground in *People v. French* (2008) 43 Cal.4th 36, 47, fn. 3.)

DISPOSITION

We reverse defendant's conviction on counts three and five.  In all other respects, the judgment is affirmed.  The trial court clerk is directed to prepare an amended abstract of judgment and forward it to the California Department of Corrections and Rehabilitation.


      NICHOLSON      , Acting P. J.


We concur:


      MURRAY      , J.


      DUARTE      , J.