Opinion
 

 JOHNSON, J.
 

 In this case we hold a crime victim has a cause of action for invasion of her constitutional right to privacy against a defense attorney who, without authorization, reads and disseminates the victim’s confidential mental health records.
 

 
 *1294
 
 Facts and Proceedings Below
 

 The following facts are taken from the complaint and the transcript of defendant Kevin Keables’s parole revocation hearing of which we have taken judicial notice. (Code Civ. Proc., § 430.30.)
 
 [1]
 
 We assume the truth of the facts alleged in the complaint for purposes of this appeal.
 

 Defendant Philip D. Israels represented defendant Keables in a criminal proceeding in which Keables was charged with the sexual battery of plaintiff Susan S. In the course of defending Keables, Israels served a subpoena duces tecum for Susan S.’s mental health records on the Harbour, a mental health treatment facility. Harbour mistakenly sent Susan S.’s mental health records directly to Israels who, knowing the private and confidential nature of the documents, read them, transmitted them to the defense psychiatrist and used them in cross-examining Susan S.. Israels read, transmitted and used Susan S.’s mental health records in order to intimidate, embarrass and humiliate her. Israels’s acts were done with Keables’s knowledge and consent.
 
 [2]
 
 As a result of Israels’s conduct, Susan S. suffered extreme emotional distress which exacerbated her mental condition. Susan S. seeks damages from Israels and Keables on theories of abuse of process, infliction of emotional distress and invasion of privacy.
 

 The trial court sustained defendants’ demurrers to the complaint with leave to amend. Susan S. elected not to amend her complaint and her action was subsequently dismissed on defendants’ motion. This appeal is from the judgment of dismissal.
 

 We conclude the complaint, viewed in conjunction with the transcript of the underlying criminal proceeding, states a cause of action for violation of Susan S.’s constitutional right of privacy. (Cal. Const., art. I, § 1.) In all other respects we affirm the judgment of dismissal.
 

 Discussion
 

 I.
 
 A Defense Attorney’s Unauthorized, Reading and Dissemination of a Crime Victim’s Confidential Mental Health Records Violates the Victim’s Constitutional Right of Privacy.
 

 In
 
 Hill
 
 v.
 
 National Collegiate Athletic Assn.
 
 (1994) 7 Cal.4th 1, 20 [26 Cal.Rptr.2d 834, 865 P.2d 633], our Supreme Court held a cause of
 
 *1295
 
 action exists for violation of the right of privacy under article I, section 1 of the California Constitution.
 
 [3]
 
 “[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.” (7 Cal.4th at pp. 39-40.)
 

 A.
 
 Plaintiff Had a Legally Protected Privacy Interest in Her Mental Health Records.
 

 It is undisputed Susan S. had a legally protected privacy interest in her mental health records.
 
 (Pettus
 
 v.
 
 Cole
 
 (1996) 49 Cal.App.4th 402, 440 [57 Cal.Rptr.2d 46];
 
 Cutter
 
 v.
 
 Brownbridge
 
 (1986) 183 Cal.App.3d 836, 842 [228 Cal.Rptr. 545] and cases cited therein.)
 

 B.
 
 Plaintiff Had a Reasonable Expectation of Privacy in the Circumstances.
 

 “A reasonable expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms.”
 
 (Hill
 
 v.
 
 National Collegiate Athletic Assn., supra, 1
 
 Cal.4th at p. 37.) “Various factors such as advance notice, customs, practices, justification, physical settings and the presence of an opportunity to consent may inhibit or diminish reasonable expectations of privacy.”
 
 (Pettus
 
 v.
 
 Cole, supra,
 
 49 Cal.App.4th at p. 441.)
 

 Susan S. did not lose her right to privacy in her mental health records because she charged Keables with sexual battery. Rather, Keables’s entitlement to inspect Susan S.’s records required a showing of good cause for their discovery and a balancing of Keables’s Sixth Amendment right of cross-examination against Susan S.’s right of privacy in her medical records.
 
 (People
 
 v.
 
 Reber
 
 (1986) 177 Cal.App.3d 523, 531-532 [223 Cal.Rptr. 139].) As the court explained in
 
 Reber,
 
 “Notwithstanding the adequacy of defendants’ showing of good cause, their entitlement to discovery was not absolute as to those matters in the records which were privileged. The privilege may be overriden [szc] only if and to the extent necessary to ensure defendants’ constitutional rights [szc] of confrontation.” (177 Cal.App.3d at p. 532.)
 

 In
 
 Reber,
 
 the court established a procedure to be followed once the defendant shows good cause for discovery of a witness’s mental health records. The trial court should (1) obtain the records and review them in
 
 *1296
 
 camera; (2) weigh the constitutional right of confrontation against the witness’s right to privacy; (3) determine which if any records are essential to the defendant’s right of confrontation; and (4) create an adequate record for review. (177 Cal.App.3d at p. 532.) None of this happened in the present case. Here, Israels received Susan S.’s records directly from the mental health facility and, with Keables’s approval and consent, read them and passed them on to the defense psychiatrist. As we discuss more fully below, no court ever determined Keables had good cause to discover Susan S.’s mental health records and no court ever balanced Keables’s need for the information contained in the records with Susan S.’s right to privacy.
 

 Apart from the procedure set out in
 
 Reber,
 
 the subpoena duces tecum procedure itself implicitly recognizes an expectation of privacy on the part of the person whose records are subpoenaed.
 
 (People
 
 v.
 
 Blair
 
 (1979) 25 Cal.3d 640, 651 [159 Cal.Rptr. 818, 602 P.2d 738].) The subpoena duces tecum in a criminal case requires the witness to appear before a
 
 judge
 
 and to bring the described books, papers or documents. (Pen. Code, § 1327.) The Judicial Council subpoena duces tecum form allows the subpoenaing party to offer the witness the option of not appearing before the judge in person. To exercise this option, the witness must place a copy of the records in a sealed envelope, place that envelope inside another envelope and mail it
 
 to the clerk of the court,
 
 not to the subpoenaing party. The reason the records are produced to the court instead of to the attorney for the subpoenaing party was explained in
 
 Blair.
 
 “The issuance of a subpoena duces tecum ... is purely a ministerial act and does not constitute legal process in the sense that it entitles the person on whose behalf it is issued to obtain access to the records described therein until a judicial determination has been made that the person is legally entitled to receive them. . . .” (25 Cal.3d at p. 651, citations and fh. omitted.)
 

 Relying on
 
 Heller
 
 v.
 
 Norcal Mutual Ins. Co.
 
 (1994) 8 Cal.4th 30, 43-44 [32 Cal.Rptr.2d 200, 876 P.2d 999], defendants argue Susan S. could not have a reasonable expectation of privacy in her mental health records as a matter of law because those records “would have been inevitably discovered during the course of the . . . litigation.” The present case, however, is factually and legally distinguishable from
 
 Heller,
 
 Moreover, experience teaches the discovery of plaintiff’s medical records in the course of the underlying litigation was not “inevitable.”
 

 In
 
 Heller,
 
 the plaintiff sued Dr. Yamaguchi, her treating physician, for revealing her medical records and information about her medical condition to Norcal, the insurance carrier which was defending another physician, Geis, who was being sued by Heller for malpractice related to that medical
 
 *1297
 
 condition. The Supreme Court held Heller failed to state a cause of action against Yamaguchi for violation of her state constitutional right to privacy. The court reasoned: “By placing her physical condition in issue in the Geis litigation, plaintiff’s expectation of privacy regarding that condition was substantially lowered by the very nature of the action. . . . [T]he information that Norcal discovered in the conversations between Dr. Yamaguchi and Norcal would have been inevitably discovered during the course of the Geis litigation because Dr. Yamaguchi was scheduled as an expert witness for the defense. Any expectation on plaintiff’s part that such information would remain confidential was thus unreasonable.” (8 Cal.4th at pp. 43-44, fn. omitted.)
 

 Unlike the plaintiff in
 
 Heller,
 
 whose expectation of privacy in her medical records was “substantially lowered” by placing her medical condition in issue, Susan S. did not place her mental health in issue by charging Keables with sexual battery. Furthermore, although a witness’s credibility is always in issue, this does not mean the defense is entitled to rummage through the medical records of every witness in a criminal prosecution looking for evidence to impeach the witness’s credibility.
 
 (People
 
 v.
 
 Pack
 
 (1988) 201 Cal.App.3d 679, 686 [248 Cal.Rptr. 240].)
 

 Moreover, there is nothing “inevitable” about the discovery of a rape victim’s mental health records. Such discovery requires a careful balancing of the defendant’s Sixth Amendment right to cross-examination and the complaining witness’s right of privacy.
 
 (People
 
 v.
 
 Reber, supra, 111
 
 Cal.App.3d at p. 532.) This balance does not invariably tip in the defendant’s favor.
 
 (People
 
 v.
 
 Pack, supra,
 
 201 Cal.App.3d at p. 686;
 
 People
 
 v.
 
 Dancer
 
 (1996) 45 Cal.App.4th 1677, 1692 [53 Cal.Rptr.2d 282].)
 

 Defendants next advance the proposition the very existence of the disclosure procedures adopted in
 
 Reber
 
 forecloses any reasonable expectation of privacy by a witness in her mental health records.
 

 Defendants base this argument on
 
 Michael
 
 v.
 
 Gates
 
 (1995) 38 Cal.App.4th 737 [45 Cal.Rptr.2d 163], a case in which the court held a retired police officer could not state a cause of action for invasion of privacy against his former police department and its employees who disclosed his personnel records to the city attorney for possible use in impeaching him as a witness against the department in an action brought by a third party. The court noted Penal Code section 832.7 allows disclosure of peace officer personnel records in a variety of situations and Evidence Code section 1043 establishes procedures by which such records can be obtained for purposes of litigation. The court further noted the police department could not make decisions
 
 *1298
 
 about whether to disclose an officer’s records without reviewing them and seeking the assistance of counsel. Therefore, the court concluded, plaintiff had no reasonable expectation of privacy in his records vis-á-vis the police department and its counsel, the city attorney. (38 Cal.App.4th at pp. 744-745.)
 

 The
 
 Michael
 
 court did not consider whether disclosing an officer’s personnel records to a third party, without following the procedures in Evidence Code section 1043, would constitute an invasion of the officer’s privacy. Thus,
 
 Michael
 
 is not authority for the proposition a person has no reasonable expectation of privacy in any information which could be disclosed to a third party under limited circumstances and if particular procedures are followed. If defendants’ position was correct then a witness’s mental health records could be invaded with impunity because the very procedures designed to protect the witness’s reasonable expectation of privacy destroy the witness’s reasonable expectation of privacy. We find this reasoning absurd and decline to adopt it.
 

 In light of the foregoing analysis, we conclude Susan S. had a reasonable expectation of privacy in her mental health records subject to a court determination whether any of those records should be disclosed to Keables and his attorney prior to their disclosure. Thus, the complaint adequately alleges the second element of the tort.
 

 C.
 
 Defendants’ Conduct Constituted a Serious Invasion of Susan S.’s Privacy.
 

 A stranger’s unauthorized reading and dissemination of a person’s mental health records is a serious invasion of the person’s privacy. (Cf.
 
 Pettus
 
 v.
 
 Cole, supra,
 
 49 Cal.App.4th at p. 445.) As the United States Supreme Court recognized in
 
 Jaffee
 
 v.
 
 Redmond
 
 (1996)_U.S._,_[116 S. Ct. 1923, 1928, 135 L.Ed.2d 337]: “Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace.” Our own Supreme Court expressed the rationale for confidentiality of mental health records in
 
 In re Lifschutz
 
 (1970) 2 Cal.3d 415, 431 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]: “ ‘The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame.’ ” And, in
 
 Hill,
 
 the court acknowledged the importance to the individual of maintaining “ ‘the right to define one’s circle of intimacy’ ” and recognized the psychological damage which can result from the unexpected disclosure of highly personal information. (7 Cal.4th at p. 25, italics omitted.)
 

 
 *1299
 
 Relying again on
 
 Michael
 
 v.
 
 Gates,
 
 defendants argue Israels’s “mere reading” of plaintiff’s medical records cannot support her claim of a serious invasion of her privacy. In
 
 Michael,
 
 the court remarked in dictum the invasion of the plaintiff’s privacy was not “sufficiently serious” because it was based on “the minimal and circumscribed review of his records by the police department and its lawyer.” (38 Cal.App.4th at pp. 745-746.) Here, Israels engaged in more than a “minimal and circumscribed review” of plaintiff’s mental health records. By his own admission he read all of the records and then passed them on to his expert witness who also read all of the records. Furthermore,
 
 Michael
 
 dealt with the review by an employer and its attorney of the personnel records of a former employee while here we deal with the review by total strangers of the highly sensitive mental health records of a victim in a criminal matter. Again, we find
 
 Michael
 
 unpersuasive.
 

 Finally, defendants argue reading and disseminating Susan S.’s mental health records was not a serious invasion of her privacy because when a
 
 Reber
 
 hearing eventually was held in the underlying criminal proceeding the trial court permitted the defense psychiatrist to testify based on what he read in Susan S.’s records. We note, however, the trial court based its ruling on the fact “the records have already been examined by the expert. There is
 
 no further invasion
 
 of the victim’s privacy.” (Italics added.) Thus the trial court did not base its ruling on a showing of good cause and a balancing of constitutional rights, as contemplated in
 
 Reber,
 
 but on the more pragmatic principle nothing can be done once the cat is out of the bag.
 

 Susan S. alleges Israels read and disseminated her mental health records knowing the information contained in them could be highly sensitive and embarrassing to her. She further alleges she in fact was intimidated, embarrassed and humiliated, suffered extreme emotional distress and her mental condition was exacerbated as a result of Israels’s conduct. Thus, the complaint adequately alleges the third element of the tort.
 

 D.
 
 Defendants Are Not Immune From Liability Under the Litigation Privilege.
 

 Susan S.’s cause of action for invasion of her constitutional right of privacy does not depend on the “publication” or “broadcast” of her mental health records but rests on Israels’ conduct in reading those records. In this respect, Israels’s conduct is similar to the defendants’ conduct of eavesdropping on and secretly recording telephone conversations in
 
 Ribas
 
 v.
 
 Clark
 
 (1985) 38 Cal.3d 355 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417] and
 
 Kimmel
 
 v.
 
 Goland
 
 (1990) 51 Cal.3d 202 [271 Cal.Rptr. 191, 793 P.2d 524].
 

 
 *1300
 
 In
 
 Ribas
 
 v.
 
 Clark,
 
 the attorney for plaintiff’s wife eavesdropped on a telephone conversation between the wife and plaintiff. The attorney then testified to the conversation in an arbitration proceeding. Plaintiff sued the attorney alleging, inter alia, violation of California’s Invasion of Privacy Act (Pen. Code, § 630 et seq.) and common law invasion of privacy. The trial court sustained the attorney’s demurrer to the complaint based on the litigation privilege. On appeal, our Supreme Court reversed as to the privacy act cause of action but affirmed as to the common law tort of invasion of privacy noting the injury under the common law tort “stems solely from defendant’s testimony at the arbitration proceeding.” (38 Cal.3d at p. 364.) In upholding the cause of action based on eavesdropping and rejecting the cause of action based on testimony which resulted from the eavesdropping, the court made an implicit distinction between an injury arising from non-communicative conduct—the attorney’s eavesdropping—and a communicative act—the attorney’s testimony. The court made this distinction explicit in
 
 Kimmel
 
 v.
 
 Goland.
 

 In
 
 Kimmel,
 
 the plaintiffs sued the defendants for unlawfully tape-recording confidential conversations between the parties in violation of Penal Code section 632. Defendants claimed they made the recordings in order to gather evidence to be used in litigation between the parties and therefore they were immune from liability under the litigation privilege. The Supreme Court rejected defendants’ immunity claim. The court held the litigation privilege “precludes recovery for tortuously inflicted injury resulting from
 
 publications
 
 or
 
 broadcasts
 
 made during the course of judicial and quasi-judicial proceedings, but does not bar recovery for injuries from tortuous
 
 conduct
 
 regardless of the purpose for which such conduct is undertaken.” (51 Cal.3d at p. 205, italics in original.)
 

 Defendants point out immediately following the statement of its holding in
 
 Kimmel,
 
 quoted above, the court went on to state its holding was “limited to the narrow facts before us involving noncommunicative acts—the illegal recording of confidential telephone conversations—for the purpose of gathering evidence to be used
 
 in future
 
 litigation.” (51 Cal.3d at p. 205, italics added.) Defendants reason that because their conduct in reading and disseminating Susan S.’s mental health records was for the purpose of gathering evidence to be used in
 
 existing
 
 litigation, not future litigation, they are not barred from asserting the litigation privilege in the present case. Defendants misread the court’s intention in limiting its holding to conduct involving future litigation. The court was not concerned its holding in
 
 Kimmel
 
 would be expanded to cover conduct involving existing litigation. No such “expansion” was necessary because, as the court observed, there is not “a single case in which [the litigation privilege] has been held to bar suit for personal
 
 *1301
 
 injuries arising from noncommunicative conduct that occurred
 
 during
 
 a judicial proceeding.”
 
 (Id.
 
 at p. 211, italics added.) Indeed, just a month prior to its decision in
 
 Kimmel,
 
 the court had held in
 
 Pacific Gas & Electric Co.
 
 v.
 
 Bear Stearns & Co.
 
 (1990) 50 Cal.3d 1118, 1132, footnote 12 [270 Cal.Rptr. 1, 791 P.2d 587], the litigation privilege would not bar liability for conduct involving “financing and otherwise promoting” litigation. The expansion at issue in
 
 Kimmel
 
 was “an
 
 extension
 
 of [the litigation privilege] to unlawful conduct undertaken to obtain evidence
 
 in anticipation of
 
 litigation.” (51 Cal.3d at p. 212, italics added.) Although the court would not permit such an extension of the litigation privilege the court was concerned, as it had emphasized in the
 
 Bear Stearns
 
 case, that the litigation privilege continue to protect free access to the courts. (See
 
 Pacific Gas & Electric Co.
 
 v.
 
 Bear Stearns & Co., supra,
 
 50 Cal.3d at pp. 1121, 1131-1133, 1135-1137.) For this reason, the court was careful to limit its holding in
 
 Kimmel
 
 to conduct— the illegal recording of confidential telephone conversations—which it found bore no reasonable relationship to assuring free access to the courts. (51 Cal.3d at p. 212.)
 

 For the reasons explained above, we conclude the litigation privilege does not shield defendants from liability for reading and disseminating Susan S.’s private mental health records for the purpose of gathering evidence to be used in the course of a criminal proceeding.
 

 E.
 
 Holding the Defendants Liable for the Unauthorized Reading and Dissemination of Plaintiff s Mental Health Records Would Not Unreasonably Interfere With a Criminal Defendant’s Sixth Amendment Rights to Confrontation and Assistance of Counsel.
 

 Defendants and their amici curiae express fear that upholding Susan S.’s cause of action for invasion of privacy will interfere with a criminal defendant’s right to confront and cross-examine the witnesses against him and chill his counsel’s zealous advocacy on his behalf. These fears are groundless.
 

 As we have previously explained, at the time of defendants’ unlawful conduct a procedure existed which permitted Keables to discover information from Susan S.’s mental health records which might assist him in preparing his defense to her accusations. Defendants and their amici curiae have not argued the
 
 Reber
 
 procedure itself interferes with a criminal defendant’s rights to confrontation and cross-examination. The only reason the present case is before us is because Keables’s attorney, Israels, chose not to follow the
 
 Reber
 
 procedure. Instead, he read through Susan S.’s records and passed them on to another member of the defense team who also read them.
 

 With a dash of hyperbole, defendants’ amici curiae argue that by upholding Susan S.’s cause of action for invasion of privacy under the facts of this
 
 *1302
 
 case we are subjecting defense counsel to liability everytime they open their mail. One amicus curiae takes this argument a step further and argues Israels had to read through all of Susan S.’s medical records before he could determine they actually were medical records. These arguments are without merit. Susan S. does not claim, and we do not hold, Israels invaded her privacy by opening an envelope addressed to him. Rather, the invasion of privacy took place when Israels read the entire record contained in that envelope and then transmitted it to the defense psychiatrist. We doubt any attorney, and certainly not Mr. Israels, is so dim of eye or wit that he or she cannot determine at a glance whether a document is a motion, a utility bill or a compilation of medical records.
 

 For all of the reasons explained above, we conclude the trial court erred in sustaining defendants’ demurrer to the invasion of privacy cause of action.
 

 II.
 
 The Complaint Fails to State a Cause of Action for Abuse of Process or Infliction of Emotional Distress.
 

 A.
 
 The Complaint Fails to State a Cause of Action for Abuse of Process.
 

 The elements of a cause of action for abuse of process are an ulterior motive in using the process and the use of the process in a wrongful manner.
 
 (Abraham
 
 v.
 
 Lancaster Community Hospital
 
 (1990) 217 Cal.App.3d 796, 826 [266 Cal.Rptr. 360].) Neither of these elements is pled in Susan S.’s complaint.
 

 Contrary to the allegations of the complaint, the mental health records of a prosecuting witness in a criminal case are subject to subpoena.
 
 (People
 
 v.
 
 Reber, supra, 177
 
 Cal.App.3d at pp. 531-532.) In an apparent attempt to get around
 
 Reber
 
 the complaint alleges that at the time the defendants subpoenaed Susan S.’s records “they knew . . . neither the records nor the contents of any of the records were admissible in evidence in the defense of the criminal prosecution.” Although as a general rule we must accept the facts pled in the complaint as true, we do not accept conclusions of fact or law. The complaint does not allege defendants had seen plaintiff’s records before they subpoenaed them. Therefore, defendants could not have known whether the records contained admissible evidence or how a court would rule on the admissibility of the records. The complaint does allege, however, at the time defendants subpoenaed Susan S.’s records they knew she was suffering from a mental disability and undergoing psychiatric treatment. A competent defense attorney would certainly investigate whether Susan S.’s mental condition might affect her competency and believability as a witness. Thus, there was nothing improper about subpoenaing Susan S.’s mental health records.
 

 
 *1303
 
 As discussed above, the
 
 Reber
 
 court went on to hold where good cause for discovery of mental health records is shown the person subject to the subpoena should furnish those records to the trial court which should review the records in camera, weigh the criminal defendant’s constitutional rights of confrontation and cross-examination against the statutory privilege for such records, determine which privileged matters, if any, are essential to vindicate the defendant’s constitutional rights and create a record adequate to review its ruling. (177 Cal.App.3d at p. 532.) This procedure was not followed in the present case. Instead, Susan S.’s mental health records were furnished directly to Israels who proceeded to use them in defense of Keables’s criminal action without prior review by the trial court and without informing Susan S. her records were in his possession. However, failure to follow the procedure set forth in
 
 Reber
 
 does not by itself give rise to an action for abuse of process. The complaint does not allege Israels directed Harbour to send the records to him instead of to the trial court. To the contrary, the complaint alleges Harbour sent the records to Israels by mistake. Thus the complaint fails to allege Israels used the subpoena process in a wrongful manner.
 

 Furthermore, the complaint does not allege facts showing defendants acted with an ulterior motive in serving the subpoena for Susan S.’s mental health records. The complaint alleges “the purpose and motivation ... in subpoenaing the . . . records of plaintiff . . . was to intimidate, embarrass and humiliate plaintiff.” As we held in
 
 Abraham,
 
 mere vexation or harassment are not objectives sufficient to give rise to the tort of abuse of process. “Moreover, there is no tort where process is used properly albeit with a bad motive.” (217 Cal.App.3d at p. 826.)
 

 Even if Susan S.’s complaint alleged the necessary elements of abuse of process, her cause of action would be barred by the litigation privilege of Civil Code section 47, subdivision (b). In our decision in
 
 Abraham,
 
 Justice Woods undertook a thorough analysis of the litigation privilege in the context of abuse of process actions and there is no need to repeat his analysis here. (See 217 Cal.App.3d at pp. 809-825.) It is sufficient to restate the conclusion: “[Ejxcept for an action for malicious prosecution [citation], the privilege ... is absolute and unaffected by malice; the publication need only have a reasonable relation to the judicial proceeding in which it is made.”
 
 (Id.
 
 at p. 815.) Here, delivering Susan S.’s mental health records to the defense psychiatrist and using them to cross-examine her in the criminal proceeding had a reasonable relation to the defense in the criminal proceeding. Therefore, the litigation privilege bars Susan S.’s abuse of process claim.
 

 
 *1304
 
 B.
 
 The Complaint Fails to State a Cause of Action for Infliction of Emotional Distress.
 

 The complaint alleges defendants’ “purpose and motivation” in subpoenaing, communicating and cross-examining Susan S. with her mental health records was to “intimidate, embarrass and humiliate plaintiff.” Even assuming the complaint alleges the elements of intentional or negligent infliction of emotional distress, the complaint alleges these communications took place in the course of the underlying criminal proceedings in which plaintiff was the complaining witness. Therefore, the claims are barred.
 
 (Heller
 
 v.
 
 Norcal Mutual Ins. Co., supra,
 
 8 Cal.4th at p. 45.)
 

 Disposition
 

 The judgment is reversed as to the cause of action for invasion of privacy. In all other respects the judgment is affirmed. Each party to bear its costs on appeal.
 

 Lillie, P. J„ and Woods, J„ concurred.
 

 Respondents’ petition for review by the Supreme Court was denied September 24, 1997. Kennard, J., was of the opinion that the petition should be granted.
 

 [1]
 

 We granted defendants’ unopposed request that we take judicial notice of the reporter’s transcript of this proceeding.
 

 [2]
 

 We will assume for purposes of this opinion Keables would be liable for the intentional torts of Israels acting within the scope of his employment. This issue was not raised in the trial court or on appeal.
 

 [3]
 

 Article I, section 1 recognizes the people of California have certain “inalienable rights” including the right of “pursuing and obtaining safety, happiness and privacy.”