Filed 7/8/15  P. v. McLish CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C076480 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F00770) |
| v. | |
| EFFRIM E. McLISH, | |
| Defendant and Appellant. | |

Defendant Effrim McLish was a friend of victim S.'s mother.  Defendant molested S. when she was 11 years old and then a year later molested S.'s best friend, 13-year-old A.  A jury found defendant guilty of one lewd act against each victim, and the trial court sentenced him to 10 years in prison.

Defendant appeals, contending:  (1) the trial court erred in admitting evidence of child sexual abuse accommodation syndrome; (2) the standard jury instruction on child sexual abuse accommodation syndrome (CALCRIM No. 1193) lessened the People's burden of proof; (3) this court must review the victims' confidential school records to

1

determine whether the trial court correctly determined there was nothing discoverable; and (4) the trial court abused its discretion in imposing an upper term sentence, and to the extent this contention is forfeited, defense counsel was ineffective.

We find no error or ineffective assistance and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A

*Count One With Victim S.*

S. was 11 years old in 2011 and lived in Sacramento with her mother.  Defendant used to visit.  Once while S. was in her mother's bedroom, defendant touched her back and then moved his hands down her legs and then told her to flip over and started touching her sides.  He then got on his knees and started rubbing her vagina.  S. was scared and nervous, but she did not do anything to stop the molestation.

Later that day, defendant came into S.'s room, sat next to S., and began rubbing his stomach.  Defendant said he had a bug bite.  Defendant then asked S. if she wanted to feel it, and S. said, "Sure."  Defendant took S.'s hand and put it down his pants, where she felt skin that felt like a hard ball.

S. told her mom about the molestation, and her mom was shocked.  The mom told defendant he could not come to the house anymore because of what he had done, but defendant denied the molestation.  Defendant stayed away for about a week, but then returned.  S. did not report to police what had happened because she was scared and her "mom loved [defendant] so much, [S.] didn't want to hurt her [mom]."

B

*Count Two With Victim A.*

A. was a schoolmate and neighbor of S.'s and her best friend.  On a Friday night in November 2012, when A. was 13, A. spent the night at S.'s house.  Defendant was the only other person home.  While S. was making dinner, defendant asked A. how old she was.  A. told him 13, and defendant responded, "you have really a nice body for your

2

age." He continued that he wanted to "lay [her] on the couch and spread open [her] legs and just eat [her] out and have sex with [her]." A. tried not to acknowledge what defendant had just said. But she did tell S. when S. reentered the living room, where A. and defendant were. S. told her "it would be okay."

After dinner, A. went into S.'s room to talk to A.'s boyfriend on the phone. As A. was on the bed, defendant walked over to the bed and put his hands inside her bra. He squeezed her breast. A. did not say anything because she was "so scared to move."

S. came into her bedroom and saw A. crying. A. told S. that defendant had put his hands down her shirt. S. told A. to calm down and said it had happened to S. before, too.

S. took A. home that night. When A. returned home, she went straight into her room and shut the door. A. was crying a lot and was distraught. A.'s mom went into A.'s room, but A. did not want to tell her mom what was wrong. When A.'s mom persisted, A. told her defendant had touched her inappropriately. She told her mom she did not come home right away because she was scared and confused.

A.'s mother called police.

C

*Testimony Regarding Child Sexual Abuse Accommodation Syndrome*

Dr. Blake Carmichael testified for the People about child sexual abuse accommodation syndrome. The syndrome includes the pattern of secrecy, helplessness, entrapment or accommodation, and delayed and/or unconvincing disclosure. The syndrome is used to explain "what's going on for kids [who] have been sexually abused." Dr. Carmichael knew nothing about the facts of this case.

3

DISCUSSION

I

*The Trial Court Properly Admitted Evidence Of*

*Child Sexual Abuse Accommodation Syndrome*

Defendant contends the trial court violated his federal and state rights to due process and a fair trial when it admitted evidence of child sexual abuse accommodation syndrome. He argues (as he did in the trial court) that this evidence "lacked probative value and relevance," "in other states, it is not uniformly accepted," and it does not satisfy the requirements for admissibility of scientific evidence under *Kelly/Frye*.[1]

A

*The Evidence Was Probative And Thus Relevant*

Defendant contends the child sexual abuse accommodation syndrome evidence was irrelevant because it did not apply to the facts here and because there are no longer misconceptions about child sexual molestation. Not so.

"[I]t has long been held that in a judicial proceeding presenting the question whether a child has been sexually molested, [child sexual abuse accommodation syndrome] is admissible evidence for the limited purpose of disabusing the fact finder of common misconceptions it might have about how child victims react to sexual abuse." (*In re S.C.* (2006) 138 Cal.App.4th 396, 418.) That was true here. For example, A. testified that defendant squeezed her breast as she was on S.'s bed. When asked if she "said anything" to defendant, A. testified, "I didn't. . . . I . . . just sat there and froze

---

**1**     *Kelly/Frye* refers to *People v. Kelly* (1976) 17 Cal.3d 24 and *Frye v. United States* (1923) 293 F. 1013. *Kelly/Frye* requires that before an expert testifies regarding a new scientific technique, the proponent of the evidence must show that the technique is sufficiently established to have gained general acceptance in the particular field in which it belongs. (*People v. Stoll* (1989) 49 Cal.3d 1136, 1155.)

4

because I was so scared to move." Similarly, S. testified that while she was in her mother's bedroom, defendant touched her back and then moved his hands down her legs and then told her to flip over and started touching her sides. He then got on his knees and started rubbing her vagina. S. was scared and nervous, but did not do anything to stop the molestation. Dr. Carmichael's testimony was relevant to explain the faulty assumption that a victim of sexual abuse will "yell, kick, scream and get the heck out of there." In reality, however, "it's very rare, we see very few kids do that."

Dr. Carmichael's testimony was also relevant to explain A.'s reluctance to talk about the molestation to her mother and S.'s reluctance to report the molestation to police. Dr. Carmichael explained that victims of sexual abuse may be reluctant to report the abuse because of potential consequences to their family if the child "bring[s] this forward."

B

*The Out-Of-State Cases Are Irrelevant Because*

*California Supreme Court Precedent Controls*

Despite the relevance of this testimony, defendant relies on out-of-state cases that find the evidence of child sexual abuse accommodation syndrome inadmissible. We, however, are bound by California Supreme Court precedent that allows admission of this evidence to explain a victim's behavior that purportedly is inconsistent with her current testimony that she was molested. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

C

*The Kelly/Frye Rule Does Not Apply To Evidence*

*About Child Sexual Abuse Accommodation Syndrome*

Finally defendant argues that evidence of child sexual abuse accommodation syndrome was inadmissible under the *Kelly/Frye* rule applicable to the admission of new scientific evidence. However, the *Kelly/Frye* rule does not apply to evidence of child

5

sexual abuse accommodation syndrome used for disabusing a jury of misconceptions it might hold about how a child reacts to molestation. (*People v. Harlan* (1990) 222 Cal.App.3d 439, 449 [the "*Kelly/Frye*" rule does not apply to this type of evidence"].)

II

*The Court's Instruction On Child Sexual Abuse Accommodation*

*Syndrome, CALCRIM No. 1193, Was Correct*

The trial court instructed the jury with CALCRIM No. 1193 as follows: "You have heard testimony from Dr. Carmichael regarding child sexual abuse accommodation syndrome. Dr. Carmichael's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not the alleged victims' conduct was not inconsistent with the conduct of someone who has been molested, and *in evaluating the believability of her testimony.*" (Italics added.)

Defendant contends this instruction lessened the People's burden of proof. Defendant notes the predecessor instruction, CALJIC No. 10.64, did not include the phrase about "evaluating the believability" of the victims' testimony. Defendant claims this phrase violates the legal principle that child sexual abuse accommodation syndrome evidence may not be used to determine whether the victim is telling the truth or to corroborate the victim's claims. We disagree.

The phrase challenged by defendant was a correct statement of law. Child sexual abuse accommodation syndrome evidence is properly used to help the jury evaluate credibility, i.e., the believability of the victim's testimony. (*People v. McAlpin*, *supra*, 53 Cal.3d at p. 1300.) Moreover, defendant is isolating a single phrase of the instruction and ignoring the rest, contrary to how we must view instructions. (*People v. Wallace* (2008) 44 Cal.4th 1032, 1075 [we determine the correctness of jury instructions from the entire set of instructions, not just an isolated part of an instruction].) CALCRIM No. 1193 as a whole told the jurors that child sexual abuse accommodation syndrome

6

evidence was not evidence defendant committed the crimes. Nothing in the latter portion of the instruction about evaluating the alleged victims' believability contradicted the former. Additionally, the trial court gave all the standard instructions on the presumption of innocence, the People's burden of proof beyond a reasonable doubt, and evaluation of witness credibility.

III

*The Trial Court Acted Within Its Discretion*

*In Not Disclosing The Victims' School Records*

In the trial court, defendant subpoenaed the victims' school records for evidence relating to defendant's guilt, exculpatory evidence, or impeachment evidence. The trial court conducted an in camera review of the produced records and found nothing discoverable.

On appeal, defendant asks us to review the records in camera to determine whether the trial court was correct. The procedure a trial court follows is this: the custodian of the records forwards the records to the court, the court will review them in camera, balance the defendant's right of confrontation against the subject of the record's right of privacy, and determine which records, if any, are essential to the defendant's right of confrontation. (*Susan S. v. Israels* (1997) 55 Cal.App.4th 1290, 1295-1296.) If the trial court determines after an in camera hearing that no records may be disclosed, a defendant is not entitled to view the documents in order to show the court abused its discretion. Instead the reviewing court looks at the same evidence to determine whether the trial court abused its discretion. (See *Pennsylvania v. Ritchie* (1987) 480 U.S. 39, 59-61 [94 L.Ed.2d 40, 58-60] [defendant's right to fair trial when seeking disclosure of confidential records is adequately protected by an in camera review of the records].)

We have reviewed the sealed records and conclude the trial court did not abuse its discretion. None of the records are essential to (or even implicate) defendant's right of confrontation.

## IV

*Defendant Forfeited His Argument That The Court Erred In Imposing The*

*Upper Term; Defense Counsel Was Not Ineffective For Failing To Object*

The trial court imposed the upper term of eight years for the lewd act on S. When imposing the upper term, the court stated, "[T]he defendant is committed to the California Department of Correction[s] for the upper term of six [*sic*] years. [¶] The Court has imposed the upper term in light of the defendant's prior criminal history. He has, in fact, been involved in criminality in the past, including violent acts - -." At this point, the prosecutor interrupted the court and stated that the upper term was eight years, and the court agreed. The court never continued its discussion of reasons for imposing the upper term.

### A

*Defendant Has Forfeited His Argument*

For the first time on appeal, defendant argues the court abused its discretion in imposing the upper term because "the record did not support using [his] 'violent' past to support imposition of the upper term sentence, and more importantly, because the facts of his case militated in favor of a middle term sentence because the current offenses were less serious than typical violation[s] of the same statute." However, "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.) Defendant has therefore forfeited this argument.

### B

*Trial Counsel Was Not Ineffective*

As a backup argument, defendant contends his trial court was ineffective for "failing to object to the imposition of the upper term in reliance on a history of 'violent acts' where the record does not support such a finding." Defendant correctly points out that defendant had only *one* violent act noted in the probation report, which was a 1990

8

conviction for assault with a deadly weapon. However, the court did not solely rely on this factor. Rather, the court stated it also considered defendant's "prior criminal history." That criminal history included the following: three other felony convictions (grand theft in 1986, receiving stolen property in 1993, and petty theft with a prior conviction in 1997); six misdemeanor convictions (petty theft, receiving stolen property, grand theft, unlawful taking of a vehicle, vandalism, and disturbing the peace, all between 1984 and 2008); and 16 unsuccessful releases on parole (out of a total of 17 parole releases). The existence of any one of these factors in aggravation would have been enough to impose the upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 730 [a single factor in aggravation suffices to support an upper term].)

Thus, there was no prejudice in defense counsel's failure to object to the court's use of defendant's violent "acts" in sentencing him to the upper term. (See *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217 [prejudice is the second requirement of a successful ineffective assistance of counsel argument; deficient performance is the first].)

DISPOSITION

The judgment is affirmed.


                                                            ROBIE            , J.



We concur:



     NICHOLSON     , Acting P. J.



     MURRAY       , J.


9