Filed 12/15/15  P. v. Jaramillo CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B261720 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA129538) |
| v. | |
| JERRY ALEX JARAMILLO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Raul A. Sahagun, Judge.  Modified and, as modified, affirmed with directions.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Zee Rodriguez and Andrew S. Pruitt, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Jerry Alex Jaramillo appeals from the judgment entered following his convictions by jury on two counts of assault with a deadly weapon (counts 1 & 2) with a finding as to count 1 he personally inflicted great bodily injury. (Pen. Code, §§ 245, subd. (a), 12022.7, subd. (a).) The court sentenced him to prison for eight years. We modify the judgment and, as modified, affirm it with directions.

## FACTUAL SUMMARY

1. *People's Evidence.*

The evidence established that during the early morning of April 3, 2013, David Castillo, Frank Enriquez, and Steven Medina, who were friends, were in a Pico Rivera bar. Castillo and Enriquez had been drinking. About 2:00 a.m., closing time, Castillo and Enriquez exited and later talked with two women. Castillo and Enriquez said they liked the San Francisco 49ers. Appellant, behind Castillo and Enriquez, said the 49ers were "faggots" and Castillo and Enriquez were "faggots" for liking the 49ers. Appellant was next to another man. Castillo and Enriquez continued talking with the women. Enriquez testified he was about six feet tall and weighed 250 pounds, and Castillo was smaller.

Appellant was calling Castillo and Enriquez "cocksuckers" and "fucking faggots." Castillo and Enriquez asked appellant what his problem was. Appellant and his companion approached Castillo and Enriquez. Appellant raised his arms and was holding something in his right fist. Castillo and Enriquez testified that appellant, using his right hand, swung at Castillo's face, and Castillo raised his left arm to deflect the blow. Castillo testified his arm was lacerated when he deflected the blow (count 2).

Castillo and Enriquez testified that after appellant stabbed Castillo, Enriquez intervened. Enriquez testified he acted as a shield for Castillo, and Enriquez's left side faced appellant. Enriquez also testified appellant stabbed him twice in his left side (count 1). One of the stab wounds cut an artery.

2

Castillo testified as follows. Enriquez intervened, not by attacking appellant but by grabbing Castillo and pulling him away. When Enriquez did that, he moved between Castillo and appellant, exposing Enriquez's left side. Appellant then hit Enriquez two or three times. When appellant did so, it looked like he punched Enriquez. Appellant had something like a knife or box cutter, and used the same weapon on Castillo and Enriquez. Enriquez backed up and his side was bleeding. Medina, who was at the scene, testified it looked like appellant punched Enriquez on his left side perhaps two or three times.

Enriquez testified that after appellant stabbed him, Enriquez asked him, "You stabbed me?" Enriquez told appellant that he had cut Enriquez. Appellant began to flee, waved his right hand while holding something in it, and threatened to cut Enriquez again. Castillo testified appellant waved a knife, box cutter, or similar instrument and said to Castillo and Enriquez, "Come on. Come on. I'll finish you." Appellant later entered a black Chevrolet Tahoe, drove it rapidly out of a driveway, failed to stop for a stop sign, and drove away. When appellant entered the Tahoe, his companion tried to enter the passenger side but appellant drove away, leaving him. Appellant's companion said, "I'm not the one who did it. It was him."

About 2:00 a.m. on April 3, 2013, Los Angeles County Sheriff's Deputy George Madrid was in his patrol car about 100 feet from the bar when he received a radio call about an assault with a deadly weapon at the bar. Madrid saw a black Chevrolet Tahoe rapidly exit the parking lot and drive away, eventually failing to stop for a stop sign. Madrid broadcast what he had seen and the dispatcher told him the assault suspect was in the Tahoe. Madrid stopped the Tahoe, which had the license plate "R8IDERS." (*Sic*.) Appellant was the driver and sole occupant of the Tahoe.

Los Angeles County Sheriff's Deputy Joseph Bernas participated in the investigation at the traffic stop. Based on his training, Bernas believed appellant was under the influence. Appellant had objective symptoms he was under the influence of a controlled substance, i.e., a stimulant. Appellant appeared to be very nervous and fidgety, and he could not stand still. His pupils were abnormally dilated and he spoke very rapidly. Bernas searched the Tahoe and found a box cutter between the driver's seat

3

and center console.  He found a folding pocketknife between the center console and the passenger seat.  He also found in the cupholder of the center console a glass pipe inside of which was .08 grams of a powder containing methamphetamine.

2. *Defense Evidence.*

In defense, appellant testified as follows.  About 10:00 p.m. on April 2, 2013, appellant went to the bar to meet friends, including Melissa Robledo.  He and an acquaintance named Jason were drinking, and appellant drank three beers.

On the night of April 3, 2013, Enriquez, Castillo, two women, and Jason were talking outside the bar.  Appellant approached the group, someone asked what team appellant was a fan of, and he replied he was a Raiders fan.  Castillo and Enriquez mocked the Raiders.  The conversation between Jason, Castillo, and Enriquez became heated.  Jason called Castillo and Enriquez "faggots and dick suckers."  Enriquez took off his jacket, threw it down, and said to appellant, " ' Come on, let's go.' "  The two women intervened, telling Castillo and Enriquez to "leave him alone, back up."

Enriquez swung at appellant, knocking a cap off his head.  Appellant, using his right hand, took his truck driver's tool knife out of his pocket.  Appellant had hoped Castillo and Enriquez would see the tool knife and retreat.  Instead, Castillo, using his left arm, swung at appellant, and appellant blocked the swing with his right hand.  Appellant then put his hands down.  Enriquez approached him twice and, each time, appellant pushed him away with both hands and the knife was in appellant's right hand.  Appellant also described these events as him using the knife to cut Enriquez when appellant was being attacked.

Castillo and Enriquez were already coming at appellant when he pulled out the knife, and the events happened quickly.  Appellant intended to use the knife only in self-defense and did not intend to hurt Castillo or Enriquez.  Appellant did not know he had cut them until after he saw Enriquez bleeding.  The knife was a folding knife and appellant had not thought the knife was open.  He pulled the knife out of his pocket and "flipped the blade on accident."

4

Appellant left the scene to get away from Castillo and Enriquez. Appellant "didn't want to end up like that Giants' fan." Appellant denied "screech[ing]" out of the parking lot. Appellant failed to stop for a stop sign and Madrid stopped him in front of a business next to the bar. When Madrid stopped appellant, appellant told him appellant was merely trying to get away from Castillo and Enriquez. An officer found in the Tahoe a methamphetamine pipe containing methamphetamine. Appellant had smoked methamphetamine about four hours before he went to the bar. When appellant arrived at the bar, he was no longer under the influence of methamphetamine. His methamphetamine use and alcohol consumption did not contribute to the cutting of Castillo and Enriquez.

Robledo testified she exited the bar and saw Castillo and Enriquez together. Castillo was standing in front of appellant, and Enriquez and a third person were yelling at each other. Enriquez said, "Come on, let's go," and Enriquez wanted to fight the third person. The third man yelled back, "[o]kay," but Enriquez and the third person did nothing.

Castillo approached appellant, the two started scuffling, and eventually Castillo was on top of appellant. Enriquez approached and got on top of appellant. Enriquez struck appellant in his side. However, Robledo also testified she did not see Enriquez hit appellant. Appellant and Enriquez stepped back and Enriquez complained appellant had stabbed him. Enriquez raised his shirt and Robledo saw where Enriquez had been cut.

3. *Rebuttal Evidence.*

In rebuttal, Madrid denied appellant offered to him any explanation as to why appellant had left the scene. Bernas testified appellant told him the following. Appellant, Castillo, and Enriquez were arguing. Appellant was afraid Enriquez, who was bigger than Castillo, was going to hit appellant. Appellant "pulled a box cutter out of his pocket with his left hand and struck him with it." Appellant did not use the "sharpened end" but used the "other side." Bernas testified appellant did not tell Bernas whether appellant had been hit.

Los Angeles County Sheriff's Detective Eric Callahan testified he interviewed appellant on April 4, 2013. Appellant never told Callahan that any of the men hit, kicked, or punched appellant. Appellant indicated he initiated the physical altercation because he was afraid of being hit. He believed he was going to be assaulted, so he merely put his arms out in front of him in a pushing movement to keep both men at bay. Callahan testified appellant changed his story during the interview. Callahan testified appellant initially told Callahan that appellant hit or punched, then appellant "immediately corrected himself and said that he pushed."

## ISSUES

Appellant claims the trial court abused its discretion by admitting evidence the pipe and methamphetamine were in the Tahoe, he appeared to be under the influence, and he admitted using methamphetamine. Respondent claims the abstract of judgment must be amended.

## DISCUSSION

1. *Admission of All of the Methamphetamine-Related Evidence Was Proper.*

a. *Pertinent Facts.*

Prior to trial, appellant moved to exclude evidence of the pipe, and methamphetamine recovered from the pipe, on the grounds the evidence was irrelevant and unduly prejudicial. Appellant also sought exclusion of testimony from a deputy (later determined to be Bernas) that (1) Bernas observed symptoms appellant was under the influence and (2) appellant admitted he smoked methamphetamine.

The prosecutor argued as follows. The present case arose based in part on the challenged evidence. The methamphetamine helped explain appellant's behavior and demeanor. There might be a difference between being under the influence, use of methamphetamine, and possession of methamphetamine, but possession evidence would corroborate the opinion of the drug recognition expert.

6

The court ruled the People were seeking to introduce evidence appellant was under the influence, evidence of appellant's state of sobriety was relevant to explain his conduct and demeanor, and the pipe and methamphetamine were relevant to corroborate Bernas's opinion. The court denied appellant's motion to exclude evidence. Appellant argued to the jury, inter alia, he acted in self-defense. The court, using CALJIC No. 5.30, instructed on self-defense.[1]

b. *Analysis.*

Appellant claims the trial court abused its discretion by admitting evidence the pipe and methamphetamine were in the Tahoe, he appeared to be under the influence, and he admitted using methamphetamine. We disagree.

Penal Code section 240, states, "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." An "assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790 (*Williams*).)

Evidence Code section 210 states, in relevant part, " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness . . . , having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." The test of relevance is whether the evidence tends logically, naturally, and by reasonable inference to establish material facts. (*People v. Scheid* (1997) 16 Cal.4th 1, 13.)

---

[1]     CALJIC No. 5.30 stated, "It is lawful for a person who is being assaulted to defend himself from attack if, as a reasonable person, he has grounds for believing and does believe that bodily injury is about to be inflicted upon him. In doing so, that person may use all force and means which he believes to be reasonably necessary and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent."

Evidence Code section 352, states, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." " 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against . . . [one party] as an individual and which has very little effect on the issues.' [Citation.]" (*People v. Wright* (1985) 39 Cal.3d 576, 585.) An appellate court applies an abuse of discretion standard of review to any ruling by a trial court concerning relevance and/or Evidence Code section 352 issues. (*People v. Waidla* (2000) 22 Cal.4th 690, 717, 724.)

In the present case, there was evidence from appellant's license plate that he was a diehard fan of the Oakland Raiders football team. Bernas's expert opinion based on various objective indicia was that appellant was under the influence of a stimulant at the time of the traffic stop. The pipe containing methamphetamine, recovered from the Tahoe appellant was driving, provided corroborating evidence appellant was under the influence of methamphetamine ingested by his use of the pipe.

The challenged evidence permitted the reasonable inference that, during appellant's encounter with Castillo and Enriquez minutes before the traffic stop, appellant was under the influence of methamphetamine, his judgment was impaired, and he was hyperactive. There was also evidence appellant had been drinking. These facts in turn had a tendency in reason to explain and corroborate the testimony of Castillo and Enriquez to the effect appellant, without reason, became verbally aggressive towards Castillo and Enriquez, both of whom had expressed allegiance to a rival football team, and that appellant's conduct escalated to the point he became the physical aggressor and assaulted Castillo and Enriquez. This evidence contradicted appellant's self-defense evidence.

Although appellant argues assault with a deadly weapon is a general intent crime and this precludes consideration of voluntary intoxication (see *People v. Mendoza* (1998) 18 Cal.4th 1114, 1127-1128), that principle arose from defense efforts to introduce evidence of voluntary intoxication to negate the mens rea of assault. The People certainly were not introducing evidence appellant was under the influence to negate the mens rea. Instead, the challenged evidence was relevant to corroborate the testimony of Castillo and Enriquez to the effect appellant was verbally and physically aggressive, and, by his conduct, initiated the physical attacks constituting the assaults.

Moreover, "a witness's credibility is always in issue." (*Susan S. v. Israels* (1997) 55 Cal.App.4th 1290, 1297.) "[A]lways relevant for impeachment purposes are the witness's capacity to observe and the existence or nonexistence of any fact testified to by the witness. (Evid. Code, § 780, subds. (c), (i); [citation].)" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9.) The challenged evidence was evidence of appellant's demeanor, admissible to impeach his capacity to observe what happened during his encounter with Castillo and Enriquez, and during the later traffic stop. (Cf. *People v. Smith* (2015) 61 Cal.4th 18, 46.) Further, appellant's testimony permitted the inference he cut Castillo and Enriquez by accident or mistake, and the challenged evidence, corroborating the testimony of Castillo and Enriquez that appellant's conduct was that of the aggressor, was relevant to prove the absence of accident or mistake.

The strong probative value of the challenged evidence was not, as appellant suggests, substantially outweighed by any prejudice arising from any inference appellant was a drug user who possessed drugs and was possibly driving under the influence. There was no evidence of drug use by appellant before the day he arrived at the bar. Moreover, there was evidence appellant drank three beers before leaving the bar. The jury reasonably could have concluded appellant was an alcohol user and was possibly driving under the influence of alcohol. The challenged evidence was not significantly more inflammatory than the alcohol-related evidence, and the challenged evidence did not uniquely tend to evoke emotional bias against appellant while having little effect on the issues. The trial court did not abuse its discretion by admitting the challenged

evidence to prove appellant's conduct and demeanor, as against relevance and/or Evidence Code section 352 objections.

Moreover, even if the trial court erred by admitting the challenged evidence, there was no prejudice. The testimony of Castillo, Enriquez, and Medina, and appellant's statements to Bernas and Callahan, provided strong evidence appellant committed the offenses. Appellant testified Castillo swung at him and appellant raised his right hand and deflected the blow, but Bernas and Callahan denied appellant said to them, respectively, that appellant had been hit. Appellant's statements, testimony, and defense witness (Robledo) presented conflicting defense versions of what happened during the incident.

Finally, appellant's defense of self-defense implicitly conceded he committed intentional acts with knowledge of facts sufficient to establish the acts by their nature would probably and directly result in the application of physical force against Castillo and Enriquez (*Williams, supra,* 26 Cal.4th at p. 790), but the defense asserted the acts were justified. However, there was no evidence Castillo or Enriquez was armed. Thus, there is no reasonable probability that, absent the challenged evidence, a result more favorable to appellant would have occurred based on his defense of self-defense. In particular, there is no reasonable probability the jury would have entertained a reasonable doubt that it would have appeared to a reasonable person, in the same or similar circumstances as appellant, to be necessary to use a deadly weapon to prevent any injury which appeared to be imminent (see fn. 1, *ante*). Any erroneous admission of the challenged evidence was not prejudicial. (Cf. *People v. Watson* (1956) 46 Cal.2d 818, 836.)

2. *Appellant's Precommitment Credit Award Must Be Reduced and the Abstract of Judgment Must be Amended to Reflect that Reduction and the Restitution Award.*

During the January 7, 2015 sentencing hearing, the court awarded appellant a total of 117 days of precommitment credit, consisting of 101 days of custody credit and 16 days of conduct credit. This total credit award and its components are reflected in the abstract of judgment.

Moreover, pursuant to appellant's stipulation, the court ordered appellant to pay restitution in the amount of $23,136.92 to the Victim Compensation Board. The abstract of judgment does not reflect this award.

Respondent claims appellant is entitled to only 15 days of conduct credit as 15 percent of the 101 days of custody credit. (There is no dispute as to the custody credit award.) Respondent's claim is well-taken. (*People v. Ramos* (1996) 50 Cal.App.4th 810, 816-817; Pen. Code, §§ 667.5, subd. (c)(8), 2933.1, subds. (a) & (c), & 4019.) The trial court's award of 16 days of conduct credit was an unauthorized sentence. (*People v. Duran* (1998) 67 Cal.App.4th 267, 269-270.) We will modify the judgment accordingly. (*Id.* at p. 270.)

Respondent's additional claim that the abstract of judgment must be amended to reflect the restitution award is well-taken. The abstract of judgment must be amended to reflect the above mentioned correct credit award and the restitution award. (Cf. *People v. Humiston* (1993) 20 Cal.App.4th 460, 466, fn. 3.)[2]

---

[2] Although the heading in respondent's brief asserts the abstract of judgment should be modified to reflect restitution fines and the correct imposition of custody credit, respondent's argument demonstrates respondent is concerned only with the victim restitution award and conduct credit.

## *DISPOSITION*

The judgment is modified by awarding appellant a total of 116 days of precommitment credit, consisting of 101 days of custody credit pursuant to Penal Code section 2900.5, subdivision (a), and 15 days of conduct credit pursuant to Penal Code sections 667.5, subdivision (c)(8), 2933.1, subdivisions (a) and (c), and 4019.  As so modified, the judgment is affirmed.  The trial court is directed to forward to the Department of Corrections and Rehabilitation an amended abstract of judgment reflecting the above modification and that the trial court ordered appellant to pay restitution in the amount of $23,136.92 to the Victim Compensation Board.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

JONES, J.[*]

We concur:

ALDRICH, Acting P. J.

LAVIN, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12