Filed 12/16/21  Arrow Disposal Services v. Gronemeier & Associates CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| ARROW DISPOSAL SERVICES, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> GRONEMEIER & ASSOCIATES, PC, INC. et al., <br><br> Defendants and Respondents. | B308001 <br><br> (Los Angeles County Super. Ct. No. 19PSCV00961) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gloria L. White-Brown, Judge.  Affirmed.

Evgeny Swarovski for Plaintiff and Appellant.

Law Office of Gronemeier & Hickambottom, Dale L. Gronemeier, and Elbie J. Hickambottom, Jr. for Defendants and Respondents.

* * * * * *

In this lawsuit, a litigant from a prior case sued its adversary's lawyers for their conduct in (1) explaining to a third party they had subpoenaed in the prior case the reasons for the subpoena, and (2) sending a letter with a settlement demand in the prior case. The trial court granted summary judgment to the lawyers, finding that their conduct fell squarely within the litigation privilege (Civ. Code, § 47), and thus was not actionable. This was undeniably correct, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *The prior case*

In December 2016, a construction and demolition debris hauler named Clean Up American, Inc. (Clean Up) sued one of its competitors, Arrow Disposal Services, Inc. (Arrow), for engaging in anticompetitive conduct—namely, illegally dumping waste meant for recycling facilities at regular landfills and covering its tracks by falsifying the weight tickets to conceal where the to-be-recycled waste had actually been dumped. Arrow filed a cross-claim alleging other anticompetitive conduct by Clean Up.

#### B. *Conduct by Clean Up's counsel in the prior case*

In the prior case, Clean Up was represented by Elbie J. Hickambottom, Jr. (Hickambottom), who was at the time working at a law firm called Gronemeier and Associates, Inc. (the law firm).

In late December 2017, Hickambottom sent Arrow a settlement demand letter that (1) outlined some of the evidence

2

Clean Up had acquired to prove Arrow's fraudulent scheme, (2) shared his intention to "subpoena" one of the businesses for whom Arrow hauled away debris, called Skanska, "to authenticate that the [falsified] weight certificates came from Arrow," and (3) offered to "resolve" the entire case (including dismissal of the cross-complaint) for $2.5 million. The letter gave Arrow one week to respond to the demand; Arrow ignored it.

On January 3, 2018, Hickambottom issued a subpoena duces tecum to Skanska seeking production of the weight tickets that Arrow had provided to Skanska. When the lawyer for Skanska called the next day for an explanation of "the relevancy of the documents requested," Hickambottom explained that the weight tickets Arrow had provided to obtain reimbursement from the government entity that hired Skanska as a contractor had been falsified, and that obtaining Skanska's copies of those tickets would confirm *when* Arrow had created false tickets. Hickambottom then sent a written letter to Skanska's lawyer as a "follow up" to their call. In the follow-up letter, Hickambottom reiterated Clean Up's theory as to how Arrow had been illegally dumping recyclable debris, and explained why Skanska's documentation would help "confirm[]" Arrow's scheme.

Skanska responded to the subpoena with its copy of the weight tickets that confirmed that Arrow had falsified them. Soon thereafter, Skanska terminated its hauling contract with Arrow.

## II. Procedural History

In November 2018, Arrow sued Hickambottom and the law firm (collectively, defendants).[1] Specifically, Arrow sued

---

[1] The action was filed in Riverside County Superior Court, but was later transferred to Los Angeles Superior Court.

defendants for inducing a breach of contract, intentional interference with contractual relations, and intentional and negligent interference with prospective economic relations. In support of each claim, Arrow alleged that defendants subpoenaed documents from Skanska and answered Skanska's questions about the subpoena "in order to extract a favorable settlement" from Arrow; that they made "derogatory" and "disparaging" comments about Arrow in the course of doing so; and that those comments prompted Skanska to cancel its contract.

Defendants moved for summary judgment based on, among other things, the litigation privilege. After further briefing and a hearing, the trial court granted the motion.

Arrow appealed from the order granting defendants' summary judgment motion. The judgment was not entered for another ten weeks.

## DISCUSSION

Arrow argues that the trial court erred in granting summary judgment for defendants.

Defendants point out several procedural defects with Arrow's appeal. To begin, Arrow took its appeal from the order granting summary judgment, which is not an appealable order. (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7.) However, because a judgment was subsequently entered and because that judgment *is* appealable, we have the discretion to treat Arrow's notice of appeal as premature and to consider the merits of the appeal. (*Castillo v. Glenair, Inc.* (2018) 23 Cal.App.5th 262, 275; *Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284, 288; Cal. Rules of Court, rule 8.104(d)(2).) We elect to exercise that discretion. Further, the record and briefs Arrow has presented on appeal are woefully

4

deficient:  The record is missing several critical documents, including the evidence in opposition to the summary judgment motion and the tentative ruling that the trial court ultimately adopted as its final ruling; and the briefs lack reasoned argument on several points.  Although these omissions give us the discretion to treat Arrow's appeal as forfeited (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [where record is inadequate for meaningful review, appellant defaults and judgment should be affirmed]; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [failure to support assertions with "reasoned argument[s]" amounts to waiver]), we elect to exercise our discretion to reach the merits of Arrow's appeal.

Turning to the merits, we are tasked with determining whether the trial court properly determined, on summary judgment, that the litigation privilege bars Arrow's claims.

Among other grounds, summary judgment is appropriate when the defendant establishes an affirmative defense and plaintiff fails to raise a "triable issue of material fact" as to that affirmative defense.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 853; *Huynh v. Ingersoll-Rand* (1993) 16 Cal.App.4th 825, 830; *Bacon v. Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 858; Code Civ. Proc., § 437c, subds. (a)(1), (c), (o)(2), (p)(2).)  In evaluating whether there are any triable issues of material fact, we must "strictly construe[]" the affidavits of the moving party, "liberally construe[]" those of the opposing party, and resolve any doubts against summary judgment.  (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874.)  We independently review a trial court's grant of summary judgment.  (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

The litigation privilege is an affirmative defense that precludes holding a person liable for making any communication in a judicial or quasi-judicial proceeding that (1) is made by authorized participants, (2) is made to achieve the objects of litigation, and (3) has a logical connection to the action. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*); *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment*).) If the privilege applies, it bars claims for each of the types of claims Arrow asserts against defendants. (See *Knoell v. Petrovich* (1999) 76 Cal.App.4th 164 [interference with contract relations]; *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1132 [interference with contract and prospective economic advantage]; *Brody v. Montalbano* (1978) 87 Cal.App.3d 725, 737-738 [interference with prospective economic advantage and inducing breach of contract].)

We independently conclude that the litigation privilege applies to the conduct by defendants that underlies each of Arrow's claims. Defendants' issuance of the subpoena, Hickambottom's explanation to Skanska about why the subpoena was necessary, and Hickambottom's follow-up letter elaborating on his explanation all fall within the privilege. Each of these is a communication made in the midst of an ongoing judicial proceeding—namely, the dueling lawsuits between Clean Up and Arrow. Further, the communications are made by authorized participants (because defendants are Clean Up's counsel); the subpoena and subsequent explication are meant to achieve the objects of that ongoing litigation (because they are aimed at obtaining evidence for use at trial); and the information sought by the subpoena has a logical connection to the litigation (because

6

it would confirm Arrow as the source of the fraudulent weight tickets).  What is more, these communications were made to Skanska, which is a "nonpart[y] with a substantial interest in the proceeding" due to its possession of evidence keenly relevant to the litigation.  (*Susan A. v. County of Sonoma* (1991) 2 Cal.App.4th 88, 94; *GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 153; see *Susan S. v. Israels* (1997) 55 Cal.App.4th 1290, 1303 (*Susan S.*) [victim sued criminal defendant's lawyer for obtaining witness's medical records by subpoena; litigation privilege applied]; *Foothill Federal Credit Union v. Superior Court* (2007) 155 Cal.App.4th 632, 635-638 [customers sued bank for producing customers' records in response to subpoena to bank; litigation privilege applied]; *Nelson v. Tucker Ellis, LLP* (2020) 48 Cal.App.5th 827, 845-846 [lawyer sued law firm employer for producing lawyer's work product in response to subpoena to law firm; litigation privilege applied].)  And to the extent Arrow is urging that defendants' presubpoena settlement letter is an independent basis for liability, that letter is also privileged because it is communication between counsel aimed at resolving an ongoing lawsuit. (*Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1148; *Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 270.)

Arrow responds with what boils down to two arguments.

First, Arrow argues that defendants' letters do not fall within the ambit of the litigation privilege because they constitute an extortionist "shakedown" rather than relating to litigation "contemplated in good faith and under serious consideration." (*Action Apartment*, *supra*, 41 Cal.4th at p. 1251.) We reject this argument.  The litigation privilege applies to any covered communications, even if the communication was made

7

with malice or intent to harm.  (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 361, superseded on other grounds by Civ. Code, § 47, subd. (b); *A.F. Brown Electric Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1126; *Susan S.*, *supra*, 55 Cal.App.4th at p. 1303.)  Thus, Arrow's allegation that defendants acted with an extortionist motive and acted with ill will because they subpoenaed Skanska without providing contemporaneous notice to Arrow is irrelevant.[2] (Accord, *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1301-1302 [allegedly extortionate demand letter; litigation privilege applies].)  Arrow ignores this precedent, instead citing the test for determining whether the privilege reaches *pre*-litigation communications, which turns on whether litigation is "contemplated in good faith and under serious consideration." That test is irrelevant where, as here, the litigation was ongoing for over a year before defendants sent the demand letter, served the subpoena on Skanska, and communicated with Skanska's lawyer.  We decline Arrow's invitation to swap the governing standard for an inapplicable one.

Second, Arrow argues that defendants cannot invoke the litigation privilege because, at the time the demand letter, subpoena, and communications with Skanska occurred, the law firm was not registered with the State Bar of California as a law

---

[2]      To the extent Arrow suggested at oral argument that the litigation privilege does not apply *at all* due to Hickambottom's failure to give contemporaneous notice to Arrow of the subpoena, this argument is waived because it was not previously raised in the briefing.

corporation.[3]  (See Rules of State Bar, Title 3, Div. 2, Ch. 3, rule 3.150 et seq.)  That is irrelevant.  It is undisputed that Hickambottom was licensed to practice law in California at all times.  And the law firm's failure to comply with a special registration requirement for professional corporations does not deprive it of the ability to invoke the privilege.  After all, the law firm acted solely through Hickambottom, and the failure of the law firm where he worked to comply with the State Bar's corporate registration rules does not make Hickambottom's communications any less privileged.  (Cf. *Gomes v. Roney* (1979) 88 Cal.App.3d 274, 275 [attorney ineligibility not a basis for granting relief]; *Russell v. Dopp* (1995) 36 Cal.App.4th 765, 778-779 [attorney's unlicensed status provides basis for relief only if "the integrity of the judicial process was compromised by his incompetency"].)

---

[3]  To support this contention, Arrow affixed to its opening brief a letter from the State Bar stating that it had no records of the law firm's corporate registration.  This is highly improper.  Arrow neglected to disclose to this court that the trial court had declined to take judicial notice of this letter, and Arrow does not challenge the trial court's ruling on appeal.  (*Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41 [failure to challenge trial court's evidentiary rulings on summary judgment obligates appellate court to honor those rulings].)

**DISPOSITION**

The judgment is affirmed.  Defendants are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ